UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 17-6341-MJ-SELTZER

UNITED STATES OF AMERICA

vs.

DANIEL JOSEPH TOUIZER,

    a/k/a "Joe or Joseph Touizer,"

    Defendant.

_____/

### GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRETRIAL DETENTION

This Memorandum supports the Government's motion for pretrial detention of Daniel Touizer based on risk of flight and economic danger to the community. The Government asks the Court for an order detaining Touizer pending his indictment and trial as there is no condition or combination of conditions of release that will reasonably assure his appearance and the safety of the community.

### FACTUAL BACKGROUND

The government mainly relies on the Complaint and Affidavit supporting probable cause to arrest as its factual background. To summarize, this is an investment fraud scheme orchestrated by Touizer that lasted about a dozen years. Touizer tricked over 150 individuals out of approximately $19,000,000. He targeted elderly, wealthy, and others in South Florida and throughout the Country. Touizer told his investors that he would "not use a dime of their money for himself" and that he would use their investment money (often retirement money) to fund his various claimed businesses. Instead, depending on which facet of his fraud scheme he was operating, Touizer used sometimes all, sometimes 90%, or 80% of investor funds for himself. He

bought houses, cars, jewelry, took trips and basically lived off of the stolen funds from his victims. Touizer has no other source of income other than money obtained through his fraud scheme. After one of his most recent fraud schemes identified in the Affidavit, he changed his name for a "fresh start" to continue to defraud.

Of the $19,000,000 in stolen funds, Touizer either withdrew or had his co-conspirators withdraw nearly $7,000,000 in cash! Based on the nature of cash withdrawals, this money is unaccounted for. What is accounted for by the forensic accounting in this case is that Touizer moved hundreds of thousands of dollars oversees, mainly to Israel and Canada. Touizer has significant travel to both countries. He admitted to this in his pretrial services report but his passports, which the FBI currently maintains (Canadian and American) show his extensive travel to Canada and Israel. He is a Canadian citizen, and his mother and brother live there. Also, he has a pregnant girlfriend in Israel. As recently as Monday, September 18, 2017, Touizer had a flight booked to Israel. One of his associates recently told the FBI that he would not be surprised if Touizer left the United States to avoid prosecution, and that he would be a fugitive from justice. The recent flight to Israel is not the only recent flight Touizer has booked; just a couple of weeks ago he had a confirmed flight to Israel, with a layover in Canada.

As for evidence showing consciousness of guilt, Touizer told another associate that Touizer thought he might be going to prison and that he may "do a couple of years in prison." Touizer owes the IRS approximately $500,000 in back taxes. In a recent letter to the IRS he asked for restructuring of a payment plan based on, among other things, his girlfriend's pregnancy. However, in his statement to pretrial services, he claims he has a child with his ex-wife. Based on the FBI's investigation, there do appear to be two women carrying Touizer's children. Either way, it appears that Touizer has family here, Israel, and Canada.

As further evidence of risk of flight, Touizer's fraud scheme was ongoing until the day he was arrested. The FBI recently executed three search warrants of Touizer's businesses. Touizer became aware of the searches while they were being executed. Days after the search warrants were executed, the FBI learned that Touizer continued to meet, solicit and obtain more money from his victims. And as recently as last week, Touizer was still meeting with victims, seeking and successfully obtaining more fraud dollars to line his pockets. This is tied to his latest scam, Protectim (mentioned in the Affidavit). The FBI's investigation shows that Touizer and his associates stole about 90% of investor funds from that fraud. Of that money, Touizer recently obtained two cashier's checks, one for $600,000 and the other for $60,000. That money, along with the other money mentioned above, has not been accounted for.

## ARGUMENT

Under the Bail Reform Act, the federal courts are empowered to detain a defendant pending trial upon a finding that the defendant is either: (i) a danger to the community; or (ii) a risk of flight. *See* 18 U.S.C. § 3142(e) (pre-trial detention authorized where no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community"). In order to secure the pretrial detention of a defendant pending trial, the United States must show by a preponderance of the evidence that the defendant is a risk of flight and by clear and convincing evidence that the defendant poses a danger to the community. *See United States v. Quartermaine*, 913 F.2d 910, 915 17 (11th Cir. 1990); 18 U.S.C. § 3142(f).

In determining whether detention pending trial is appropriate, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature

and seriousness of the danger to any person or the community that would be posed by the person's release. *See* 18 U.S.C. § 3142(g).

In examining the 18 U.S.C. § 3142(g) factors with respect to Touizer, it is clear that the factors weigh heavily in favor of detention based on the Defendant's risk of flight and danger to the community.

**The Nature and Circumstances of the Offenses Charged and the Weight of the Evidence**

The evidence of Mail and Wire Fraud against this defendant is significant. Based on corporate filings, bank records obtained from multiple accounts, cooperating co-conspirators, confidential informants, undercover agents, and incriminating audio/video recordings of Touizer, he is responsible for at least $19 million in actual fraud loss. Concerning the nature of the offenses charged, this large-scale mail and wire fraud conspiracy carries with it significant punishment. The maximum term of imprisonment for Touizer is twenty years in prison. As for the Sentencing Guidelines, according to the Government's analysis, Touizer, the leader/organizer of this conspiracy, who personally received millions in fraud proceeds, score out to 168 to 210 months' incarceration. *See United States v. Al-Arian*, 280 F. Supp. 2d 1345, 1358 (M.D. Fla. 2003) ("the stronger the government's case, especially if the sentence will be severe, the greater a defendant's incentive to flee").

**The History and Characteristics of the Defendant**

The third factor the Court must consider is significant for any detention issue, as evidenced by the statute itself. Section 3142(g)(3) focuses on very specific items for the Court to address in making the detention/bond decision. Section 3142(g)(3) requires an examination of "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol

abuse, criminal history, and record concerning appearance at court proceedings; and . . . whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law . . . ."

The fraud loss here is significant. As stated earlier, large portion of this money, as far as what Touizer did with it, is unaccounted because he withdrew it in cash. The Government, through the grand jury, acquired several bank accounts and its forensic accountants have attempted to trace the funds. To date, the large majority of the funds have been withdrawn from the many accounts, through cash withdrawals, or funneled to companies which appear to be used by the Defendant to launder money. Still, millions of dollars cannot be traced and, thus, the Government submits that the Defendant has access to these funds which may then be used to flee and avoid apprehension.

As courts have observed in considering bond, merely having access to significant funds is not enough; evidence of strong foreign family or business ties is necessary to detain a defendant even in the face of a high monetary bond. *See United States v. Salter,* No. 99-8110-CR-Hurley (S.D. Fla. Nov. 5, 1999) (ordering detention of defendant in economic crime case who was foreign citizen with substantial means and extensive history of international travel; $5 million bond not sufficient to overcome serious risk of flight); *United States v. Epstein*, 155 F. Supp. 2d 323 (E.D. Pa. 2001) (reversing magistrate judge's denial of detention; $1 million personal surety bond and electronic monitoring was not sufficient security based upon defendant's alien status and lack of ties to the United States). *See also United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990) (defendant detained as a flight risk because of substantial foreign contacts); *United States v. Ishraiteh*, 59 F. Supp. 2d 160 (D. Mass. 1999) (detention appropriate for alien defendant charged

with mail and wire fraud who had extensive family and employment ties with foreign entities and no family ties to the United States or district where charges pending).

**The Nature and Seriousness of the Defendant's Danger to the Community**

Touizer poses a real economic danger to the public.  *See United States v. Reynolds*, 956 F.2d 192 (9th Cir. 1992); *United States v. Parr*, 399 F. Supp. 883, 888 (W.D.Tex.1975) (pecuniary harm)); *see also United States v. Moss*, 522 F. Supp. 1033, 1035 (E.D. Pa.1981) ("It is generally agreed, of course, that a [c]ourt may refuse bail on the ground that a defendant poses a threat to the community even though the threat is pecuniary rather than physical."), aff'd 688 F.2d 826 (3rd Cir.1982); *United States v. Miranda*, 442 F. Supp. 786, 792 (S.D.Fla.1977) ("First, it is beyond dispute that the criterion of 'danger to the community,' which is an explicit component of the Bail Reform Act, is not limited to the potential for doing physical harm.") (citing *United States v. Louie*, 289 F. Supp. 850 (D.C.Cal.1968)).  Here, as demonstrated above, Touizer is engaging in or is likely to engage in continued economic harm to the community.

      Respectfully submitted,

      BENJAMIN GREENBERG
      ACTING UNITED STATES ATTORNEY

      By:  /s/ Roger Cruz
      Assistant United States Attorney
      Florida Bar Number 157971
      99 Northeast 4th Street
      Miami, Florida 33132

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

      /s/ Roger Cruz
      Assistant United States Attorney